UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIEL ARMANDO LANGARICA, | No. 2:16-cv-0080 KJM AC |
| Petitioner, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| SCOTT FRAUENHEIM, Warden,[1] | |
| Respondent. | |

Petitioner is a California state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The action proceeds on the petition filed on December 10, 2015,[2] ECF No. 1, which challenges petitioner's 2011 convictions for kidnapping, rape, robbery, and related offenses. Respondent has answered the petition, and the time for petitioner to file a traverse has expired. Accordingly, the matter has been submitted for decision.

////
////
////

---

[1] Petitioner named the People of the State of California as the respondent. The proper respondent in a habeas petition is the warden of the institution where the petitioner is incarcerated, however. See Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004). Accordingly, the court will substitute Scott Frauenheim, Warden of Pleasant Valley State Prison as respondent. See Fed. R. Civ. P. 25(d).

[2] See Houston v. Lack, 487 U.S. 266 (1988) (establishing rule that a prisoner's court document is deemed filed on the date the prisoner delivered the document to prison officials for mailing).

1

# BACKGROUND

## I. Proceedings In the Trial Court

### A. Preliminary Proceedings

Petitioner was charged in the San Joaquin County Superior Court with: (1) kidnapping for ransom or extortion in violation of Cal. Penal Code § 209(a); (2-3) two counts of rape by force or fear in violation of Cal. Penal Code §261(a)(2); (4) forcible oral copulation in violation Cal. Penal Code §288a(c)(2); (5) assault with intent to commit forcible rape, sodomy, or oral copulation[3]; (6) first degree robbery in violation of Cal. Penal Code §211; (7) first degree burglary in violation of Cal. Penal Code §459; and (8) criminal threats in violation of Cal. Penal Code §422. 2 CT 371-379.[4]

At a preliminary hearing, the victim identified petitioner as a participant in her kidnapping. 4 RT 1157.[5] She had previously failed to pick petitioner's photograph out of a lineup. 2 RT 364-365, 417-419. Petitioner filed a motion to exclude evidence of the victim's identification at the preliminary hearing, describing the identification as "unduly suggestive." CT 484-488. He also moved to exclude any in-court identifications at trial as impermissibly tainted by the events of the preliminary hearing. Id. The trial court denied that motion after finding that petitioner's challenge went to the weight to be given to the victim's identification, rather than its admissibility. RT 81-83.

### B. The Evidence Presented At Trial

#### 1. Prosecution Case

The victim testified that, on the night of October 14, 2006, four men broke into the bedroom where she was sleeping with her children. One man beat her with a metal bat; another rifled through her closet; and a third demanded to know where the money was. The men were seeking money from the victim's husband and ultimately determined that they would take the

---

[3] The state initially charged petitioner with assault with intent to commit a felony during commission of first degree burglary in violation of Cal. Penal Code § 220(b). 2 CT 377-378. The state amended this allegation at close of case. 5 RT 1281.
[4] "CT" refers to the Clerk's Transcript on Appeal, which has been lodged with the court.
[5] "RT" refers to the Reporter's Transcript on Appeal, which has been lodged with the court.

victim, travel to the husband's place of work, and threaten to kill her unless the husband paid them three thousand dollars.

They took the victim to an SUV, ordered her to sit in the second row, and placed a shirt over her head to obscure her vision. Two of the men sat to either side of her and removed her nightgown and touched her breasts. They reached the husband's place of employment – a Pollo Loco restaurant – and found that it had already closed. They drove around the parking lot and two of the men continued touching the victim's breasts.

Eventually the driver headed toward the freeway and one of the men sitting beside the victim forced her into the back of the SUV and raped her. Then the man who had been sitting on the other side of the victim did the same.

The driver never got on the freeway and, instead, drove along a road which ran beside a levee. Eventually he stopped and ordered the victim out of the car. The driver then forced the victim to orally copulate him. The victim asked for the driver's shirt after a car drove by. When a second car drove by, she managed to escape on foot. After the men drove away in the SUV, the victim flagged a passing car and asked them to call the police.

Police arrested one of the men – Ortega – on the morning of October 15, 2006. Ortega would later identify petitioner as one of the men who sat beside the victim in the second row of the SUV. The victim was unable to identify petitioner from a photograph lineup in 2008. At a 2009 preliminary hearing, however, she identified petitioner as the driver of the SUV. She had previously identified another man – Corral – as the driver in mid-2008. A police officer involved in the arrest of Corral noted that this may have been because Corral's appearance had changed significantly by the time of his 2009 preliminary hearing – his hair was longer, he had shaved his goatee, and was now wearing glasses.

2. Defense Case

Petitioner pled not guilty and denied the allegations against him. The defense relied on Dr. Stacy Rilea, a doctor of psychology, who testified as an expert on memory. Dr. Rilea testified that memory is affected by stress and violence and that it decays over time. She also testified that an identification from a photographic lineup is more likely to be accurate closer in time to the

3

relevant event. Dr. Rilea further stated that a person's confidence in an identification is a poor predictor of its accuracy.

### C. Outcome

On June 14, 2011, the jury found petitioner guilty on all counts. 2 CT 544-556. The jury also found true the enhancements that the sex crimes were committed during commission of a kidnapping. Id. On August 15, 2011, the court sentenced petitioner to 62 years and four months to life with the possibility of parole. 3 CT 782-785.

## II. Post-Conviction Proceedings

Petitioner timely appealed, and the California Court of Appeal affirmed the judgment of conviction on September 24, 2014. Lodged Doc. 1. Petitioner then filed a petition for review with the California Supreme Court on October 21, 2014. Lodged Doc. 6. This petition was summarily denied on December 17, 2014. Lodged Doc. 7.

Petitioner then filed a petition for writ of habeas corpus with the California Supreme Court on December 21, 2015. Lodged Doc. 8. The California Supreme Court denied this petition for review on March 30, 2016 with a citation to In re Robbins, 18 Cal. 4th 770, 780 (1998). Lodged Doc. 9. Citations to Robbins indicate that the petition was denied as untimely. See Walker v. Martin, 562 U.S. 307, 313 (2011).

By operation of the prison mailbox rule, the instant federal petition was filed December 10, 2015.[6] ECF No. 1. Respondent answered on September 2, 2016. ECF No. 18. Petitioner did not file a traverse.

## STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an

---

[6] See supra n. 2.

4

> unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons. Harrington v. Richter, 131 S. Ct. 770, 785 (2011). State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state-law procedural principles to the contrary. Id. at 784-785 (citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 785.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). Only Supreme Court precedent may constitute "clearly established Federal law," but courts may look to circuit law "to ascertain whether…the particular point in issue is clearly established by Supreme Court precedent." Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407-08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

Review under § 2254(d) is limited to the record that was before the state court. Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011). The question at this stage is whether the state court reasonably applied clearly established federal law to the facts before it. Id. In other words, the

focus of the § 2254(d) inquiry is "on what a state court knew and did." Id. at 1399. Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis." Frantz v. Hazey, 533 F.3d 724, 738 (9th Cir. 2008) (en banc). A different rule applies where the state court rejects claims summarily, without a reasoned opinion. In Richter, supra, the Supreme Court held that when a state court denies a claim on the merits but without a reasoned opinion, the federal habeas court must determine what arguments or theories may have supported the state court's decision, and subject those arguments or theories to § 2254(d) scrutiny. Richter, 131 S. Ct. at 786.

Relief is also available under AEDPA where the state court predicated its adjudication of a claim on an unreasonable factual determination. Section 2254(d)(2). The statute explicitly limits this inquiry to the evidence that was before the state court.

## DISCUSSION

I. Claim One: Ineffective Assistance of Counsel

    A. Petitioner's Allegations and Pertinent State Court Record

Petitioner argues that his trial counsel rendered ineffective assistance by failing to object to the state's argument regarding the definition of aider and abettor liability. ECF No. 1 at 5. Petitioner raised this claim for the first time in his December 21, 2015 habeas petition to the California Supreme Court. Lodged Doc. 8 at 3.

During closing argument, the prosecutor argued, in relevant part:

> Now, some of the laws are being mixed together here during the arguments to make it – you know, there has to be an agreement along with knowledge of whether or not other people are going to do these things, and whether or not you're actively facilitating – so it's mixing up those whole ideas of – separate ideas of aiding and abetting, where you know what the guy's going to do, and you go along with it by facilitating it, by aiding it, or promoting it. Or secondly, whether you have the aiding and abetting and what they call the natural and probable consequences. Those are two separate things. And conspiracy is yet another thing over here.
>
> And so there doesn't have to be agreement to have aiding and abetting. So it doesn't have to be that there's an agreement when you have aiding and abetting. And, again, I made that chart to kind of help break it down as to what everybody was doing here and what we heard during the testimony.

> . . .
>
> And that being, for Philip Corral and Gabriel Langarica, the kidnap for intent to extort for ransom purposes is direct liability. Because they are both in there. And when they take Martha out of there as a group, they are acting as a group. They are all doing it. They all understand why they are doing it. They are asking her for the money. They are asking where her husband is.
>
> . . .
>
> So even if you put Gabriel Langarica up there in the number two spot, then he wouldn't be directly liable for the rape. He would be liable under aiding and abetting. That's why that red line is there. Because you don't need to go any farther than just regular aiding and abetting. You know what the other guys are going to do, and when they are doing it, you're promoting it, you're instigating it, you're a part of the whole thing to enable it to happen. And that is what aiding and abetting is.
>
> And natural and probable consequences take you down even one further, and that's a co-participant does something and it's foreseeable that they are going to do it. And that a reasonable person in that place would understand that that's exactly what's going to happen. And that's what the natural and probable consequences is.

6 RT 1518-1519.

### B. The Clearly Established Federal Law

The clearly established federal law governing ineffective assistance of counsel claims is that set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). To succeed on a Strickland claim, a defendant must show that (1) his counsel's performance was deficient and that (2) the "deficient performance prejudiced the defense." Id. at 687. Counsel is constitutionally deficient if his or her representation "fell below an objective standard of reasonableness" such that it was outside "the range of competence demanded of attorneys in criminal cases." Id. at 687-88 (internal quotation marks omitted). "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687.

Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.

"The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011).

"The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is 'doubly' so." Richter, 562 U.S. at 105 (citations omitted). Thus, in federal habeas proceedings involving claims of ineffective assistance of counsel, AEDPA review must be "doubly deferential" in order to afford "both the state court and the defense attorney the benefit of the doubt." Woods v. Donald, 135 S. Ct. 1372, 1376 (2015) (quoting Burt v. Titlow, 134 S. Ct. 10, 13 (2013)).

### C. The State Court's Ruling

This claim was raised for the first time in petitioner's state petition for habeas corpus, which was denied as untimely by the California Supreme Court. Lodged Docs. 8-9.

### D. Procedural Bar

Respondent contends that this claim is foreclosed by the California Supreme Court's determination that the petition in which it was raised was untimely. The court agrees. As noted above, the state petition raising the current ineffective assistance claim was denied by the California Supreme Court with a citation to In re Robbins, 18 Cal. 4th 770, 780 (1998), which indicates that the petition was untimely. In Walker v. Martin, the United States Supreme Court held that California's untimeliness bar was an adequate and independent ground that bars relief in federal court. 131 S. Ct. 1120, 1124 (2011). Petitioner has not made a requisite showing of cause and prejudice which would lift this bar to relief. See Maples v. Thomas, 132 S. Ct. 912, 922 (2012) ("The bar to federal review may be lifted, however, if the prisoner can demonstrate cause for the [procedural] default [in state court] and actual prejudice as a result of the alleged violation of federal law.") (internal quotation marks omitted).[7]

////

////

---

[7] The court notes that, even if this claim were considered on the merits, it would still fail. As discussed below at §III of the analysis, the court of appeal found that proper instructions rendered any misstatement of law on the part of the prosecutor harmless. Accordingly, petitioner would be unable to show that his trial counsel's failure to object actually prejudiced him.

8

## II. Claim Two: Accomplice Liability Instructions

### A. Petitioner's Allegations and Pertinent State Court Record

Petitioner raises two claims challenging the trial court's accomplice liability instructions. ECF No. 1 at 7, 10. The court of appeal provided the following background:

> Defendants further contend the trial court erred in instructing the jury on alternative theories of liability for the sex crimes. They claim there was insufficient evidence to support instructing with CALCRIM Nos. 417 and 402, and they seek a new trial on the sex crimes.
>
> . . .
>
> The trial court also instructed the jury with CALCRIM No. 402 [natural and probable consequences doctrine]. The trial court provided the following instruction:
>
> "Under the natural and probable consequences doctrine, a person who is guilty of one crime may also be guilty of other crimes that were committed at the same time.
>
> "The defendant is charged with Counts 1 through 8 on the List of Counts provided to you with your jury instruction packet.
>
> "Under the natural and probable consequences doctrine, you must first decide whether the defendant is guilty of Count 1, Kidnapping for Ransom/Extortion. If you find the defendant guilty of this crime, you must then determine whether he is guilty of Counts 2 through 6, and 8, or any lesser crime thereto.
>
> "To prove that the defendant is guilty of any of the crimes charged in Counts 2 through 6 and 8, or any lesser crime thereto, under this doctrine, the People must prove that:
>
> "1. The defendant is guilty of Count 1, Kidnapping for Ransom/Extortion;
>
> "2. During the commission of Count 1, a coparticipant in Count 1 committed one or more of the crimes charged in Counts 2 through 6 and 8, or any lesser crime thereto; and
>
> "3. Under all of the circumstances, a reasonable person in the defendant's position would have known that the commission of one or more of the crimes in Counts 2 through 6 and 8, or any lesser crime thereto, was a natural and probable consequence of the commission of Count 1.
>
> "A coparticipant in a crime is the perpetrator or anyone who aided and abetted the perpetrator. It does not include the victim or innocent bystander.
>
> "A natural and probable consequence is one that a reasonable

> person would know is likely to happen if nothing unusual intervenes. In deciding whether a consequence is natural and probable, consider all of the circumstances established by the evidence. If the crimes charged in Counts 2 through 6 and 8, or any lesser crime thereto, were committed for a reason independent of the common plan to commit Count 1, then the commission of Counts 2 through 6 and 8, and any lesser crime thereto, was not a natural and probable consequence of Count 1.
>
> "To decide whether the crimes charged in Counts 1 through 8, or any lesser crime thereto, were committed, please refer to the separate instructions for these crimes in your jury instruction packet."

People v. Langarica, 2014 Cal. App. Unpub. LEXIS 6757, 2014 WL 4735000, at *7-8 (Cal.App. 3 Dist., 2014) (unpublished).

### B. The Clearly Established Federal Law

Challenges to state jury instructions are grounded in state law and, accordingly, not generally cognizable on federal habeas review. Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). In order to warrant federal habeas relief, a challenged jury instruction "cannot be merely undesirable, erroneous, or even universally condemned, but must violate some due process right guaranteed by the fourteenth amendment." Cupp v. Naughten, 414 U.S. 141, 146 (1973) (internal quotations omitted). A challenge to a trial court's jury instructions is reviewed under the standards in Brecht v. Abrahamson, 507 U.S. 619, 623 (1993) – that is, whether the error had a substantial and injurious effect in determining the jury's verdict. See California v. Roy, 519 U.S. 2, 5 (1996). "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." Henderson v. Kibbe, 431 U.S. 145, 154 (1977). The reviewing court should consider an instruction in the context of the entire record rather than judging it in isolation. Estelle, 502 U.S. at 72.

### C. The State Court's Ruling

The state court of appeal rejected petitioner's instructional claims, reasoning:

> The trial court instructed the jury with CALCRIM No. 417 [liability for coconspirators' acts]. "Under California law, a person who aids and abets the commission of a crime is a 'principal' in the crime, and thus shares the guilt of the actual perpetrator." (People v. Prettyman (1996) 14 Cal.4th 248, 259.) Liability is based on an act

by the perpetrator to which the accomplice contributed. (Ibid.) Defendants claim an uncharged conspiracy cannot be the basis for aider and abettor liability because the theory is not consistent with definitions of "principal" in Penal Code section 31. The California Supreme Court rejected this argument, however, holding that conspirators are included in the definition of principal. (People v. Mohamed (2011) 201 Cal.App.4th 515, 523 [citing In re Hardy (2007) 41 Cal.4th 977, 1025].) Accordingly, the trial court did not err in giving CALCRIM No. 417.

. . .

Defendant Langarica contends that the instruction incorrectly told the jury the target offense was kidnap for ransom, whereas Barba and Ortega testified that the group had agreed at the outset only to commit robbery and burglary. As further evidence that the group agreed only to robbery, Langarica points to Barba's police testimony that, when Corral started hitting the wife, Langarica asked Corral, "What the heck are you doing?"

Although we do not discredit the evidence that the group initially intended to rob and "rough up" Gustavo, that plan was foiled when the group discovered Gustavo was not at home and his wife did not hand over the money Corral said he expected to collect. When Corral dragged Gustavo's wife out of her apartment in a nightgown demanding that she lead him to her husband, a new plan emerged. Even if Langarica wondered aloud why his brother was hitting the wife, as Barba testified, there was no evidence of any objection to forcing her from her bed, throwing her into the vehicle and driving to where they expected to find her husband. The unmistakable objective at that point was kidnapping for ransom. As we have explained, it is not unusual for a new criminal objective (and related aider and abettor liability) to occur spontaneously. (People v. Nguyen, supra, 21 Cal.App.4th at p. 532.) Moreover, culpability is imposed on aiders and abettors "simply because a reasonable person could have foreseen the commission of the nontarget crime." (People v. Canizalez (2011) 197 Cal.App.4th 832, 852.) There was substantial evidence to support instructing the jury that kidnapping for ransom was the target crime by the time the wife was seated in the backseat of the Suburban.

Langarica, 2014 WL 4735000 at * 7-8. Petitioner raised these claims in his petition for review that was summarily denied by the California Supreme Court. Lodged Docs. 6-7.

D. Objective Reasonableness Under § 2254(d)

Respondent correctly argues that this court cannot consider the question of whether conspiracy can form the basis of aider and abettor liability under California law. This court is bound by the court of appeal's determination of this state law question. Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on

11

direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). No U.S. Supreme Court precedent prohibits the California rules of accomplice liability applied by the state court here. See Wright v. Van Patten, 552 U.S. 120, 125-26 (2008) (per curiam) (if no Supreme Court precedent controls a legal issue raised by a habeas petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly established federal law). Moreover, petitioner has failed to demonstrate any fundamental unfairness caused by the challenged instructions. Accordingly, there can have been no unreasonable application of federal law by the California court.

Similarly, there is no clearly established federal law that prevents California from allowing for the spontaneous occurrence of a new criminal objective. See Wright, supra. This court must accept the court of appeal's determination of this state law question as well. Bradshaw, 546 U.S. at 76.

Petitioner contends that that there was insufficient evidence to support giving CALCRIM 402. To the extent the California Court of Appeal's contrary conclusion is subject to review as a factual finding, the court concludes it was a reasonable interpretation of the state court record. See Taylor v. Maddox, 366 F.3d 992, 999 (9th Cir. 2004). The victim testified that petitioner and his companions decided, after breaking into her home, that they would take her as a hostage and use her to extract money from her husband. RT 210-212. This testimony was corroborated by Francisco Barba – one of the codefendants – who testified that the victim was forced into the backseat of the SUV and asked about the whereabouts of her husband. 2RT 477-478. After learning that he worked at a Mexican restaurant, Barba testified that he and his codefendants set out to find him with the victim in tow. Id. at 478. This evidence is sufficient to support the appellate court's finding that kidnapping for ransom was the "target crime" when the victim was seated in the backseat of the SUV. Crucially, this court does not weigh whether it would reach the same conclusion based on de novo review of the state record; reversal is dictated only if "an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record." Taylor, 366 F.3d at 1000.

////

12

1  III.   Claim Three: Prosecutorial Misconduct

2       A.  Petitioner's Allegations and Pertinent State Court Record

As noted above regarding his ineffective assistance claim, petitioner argues that the prosecutor misstated the law on aider and abettor liability during closing argument, thereby prejudicing him. ECF No. 1 at 8. The prosecutor's argument, in relevant part, is reproduced above in § I of the analysis.

   B.  The Clearly Established Federal Law

In reviewing prosecutorial misconduct claims, "[t]he relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotations omitted). "To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial." Greer v. Miller, 483 U.S. 756, 765 (1987). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips, 455 U.S. 209, 219 (1982). "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned." Darden, 477 U.S. at 181.

   C.  The State Court's Ruling

The state court rejected petitioner's claim. It reasoned:

> Dykes held that a closing argument reaches the incurable level only when a prosecutor uses " ' "deceptive or reprehensible methods" ' " and " 'it is reasonably probable that without such misconduct, an outcome more favorable to the defendant would have resulted.' " (Dykes, supra, 46 Cal.4th at p. 760, quoting People v. Riggs (2008) 44 Cal.4th 248, 298.) In this case, the prosecutor described the jury instructions on aider and abettor liability and the evidence supporting each alternative theory. Defendants point to nothing inherently deceptive or reprehensible in the argument; they simply disagree with the prosecutor's interpretation of the law. Defendants claim prejudice in "incorrect statements of the law," but even if the prosecutor's characterization of legal standards was wrong, proper instructions render such errors harmless. (People v. Montiel (1993) 5 Cal.4th 877, 937 (Montiel).) The jury was instructed that statements of counsel were not evidence and that the jury was to follow the court's instructions if attorney comments conflicted with the instructions. We presume that the jurors understood and followed the instructions. (People v. Hinton (2006) 37 Cal.4th 839, 871.)

13

> The claim of prosecutor misconduct was forfeited, but even if it had been timely raised, allegedly erroneous descriptions of law would have been rendered harmless under Montiel, supra, 5 Cal.4th at page 937. Accordingly, the failure of defense counsel to object to the prosecutor's closing argument did not deprive defendants of the effective assistance of counsel.

Langarica, 2014 WL 4735000 at *9. Petitioner raised this claim in his petition for review that was summarily denied by the California Supreme Court. Lodged Docs. 6-7.

### D. Objective Unreasonableness Under § 2254(d)

As a preliminary matter, respondent argues that this claim is procedurally defaulted because petitioner's trial counsel failed to make a contemporaneous objection to the prosecutor's statements during closing argument. The state court of appeal recognized that the failure to object forfeited this claim, but nevertheless reached its merits. Id. A federal habeas court may bypass a procedural default to reach the merits of a clearly non-meritorious claim. See Lambrix v. Singletary, 520 U.S. 518, 525 (1997) (federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits). The court elects to do so with respect to this claim.

The essence of petitioner's claim is that he was prejudiced by the prosecutor's misstatement of California law. The court of appeal determined that, to the extent the prosecutor gave any erroneous interpretation of law, the error was made harmless by the correct instructions which the trial court gave on this issue. The record reflects that these instructions were given (3 CT 681-684), and this court is bound by the court of appeal's finding that they were a correct articulation of California law. Bradshaw, 546 U.S. at 76 (2005). The jury was also instructed that "[i]f you believe that the attorneys' comments on the law conflict with [the trial court's] instructions, you must follow [the trial court's] instructions." 3 CT 651. A jury is presumed to follow its instructions. See Weeks v. Angelone, 528 U.S. 225, 234 (2000). Based on the foregoing, this court cannot conclude that petitioner was deprived of a fair trial by the prosecutor's statements. The claim should be denied.

////

////

14

IV. Claim Four: Attack on Victim's In-Court Identification

   A. Petitioner's Allegations and Pertinent State Court Record

Petitioner argues that the trial court erred in declining to exclude the victim's identification of him as "unduly suggestive." ECF No. 1 at 16. The court of appeal provided the following background:

> Prior to trial, Corral and Langarica filed motions to exclude evidence of the wife's identification of them during what they described as an "unduly suggestive" procedure at their preliminary hearing. They claim the subsequent admission of identification evidence was so suggestive that their constitutional rights were violated.
>
> Initially, the wife described the man who awakened her on the night of the crimes as fair-skinned and having a very short haircut. She said that man was also the driver. She estimated his age to be around 30. At the preliminary hearing, she said the man at counsel table (Langarica) was the fair-skinned driver. The prosecutor had not told her how many defendants were charged. Although Corral was in the courtroom, the wife said she did not recognize anyone else after she identified Langarica. The trial court observed that Corral was sitting some distance behind Langarica, had his head down and was not directly facing the witness. The next day, the prosecutor asked the wife if she recognized Corral, pointing him out and identifying him for the record as Philip. The prosecutor offered to have Corral come closer. When they were separated by about 12 feet, the wife said she recognized Corral as the man who sat in the front passenger seat.
>
> Langarica argues the wife identified him only because he sat at counsel table for the preliminary hearing "in the position traditionally allotted to the defendant." Corral contends she identified him because the prosecutor used his first name, which the wife possibly could have heard on the night of the crimes, and because the prosecutor directed the wife's attention to him, which Corral contends impermissibly implied he was involved and insinuated that her identification of Langarica the prior day was wrong and she should "keep trying."
>
> Acknowledging the wife's "checkered history of identification," the trial court denied the motions to exclude victim identification, ruling that the circumstances asserted by defendants went to the weight and not the admissibility of the evidence. The trial court cited People v. Contreras (1993) 17 Cal.App.4th 813 (Contreras ), expressing an intention to provide "a lot of latitude" during trial for questioning about possible misidentification.
>
> In Contreras, a victim identified a defendant at a preliminary hearing after failing to recognize the defendant in photographs. (Contreras, supra, 17 Cal.App.4th at p. 822.) Although the trial court believed the witness lied about recognizing the defendant, it

15

> admitted the evidence and allowed the circumstances to be fully explored at trial. (Id. at pp. 823–824.) The Court of Appeal found no constitutional unfairness because the identification issue was "largely one of credibility" and therefore a "question for the jury at trial, not an issue to be resolved in pretrial motions." (Ibid.)
>
> Here, the wife had not positively identified Langarica prior to the preliminary hearing. When she did identify him, she said he was the driver, even though she had previously identified Corral as the driver. But Barba and Ortega independently identified Corral as the driver and Langarica as a participant. At trial, the wife was questioned at length about her identification of the perpetrators. The defense offered an expert witness on the fallibility of eyewitness testimony. Defense counsel argued extensively about the wife's identification errors in closing argument, at one point calling her "completely unreliable."

Langarica, 2014 WL 4735000, at *3–4.

### B. The Clearly Established Federal Law

The admission of evidence is generally a matter of state law, and habeas relief does not lie for errors of state law. Estelle, 502 U.S. at 67. The erroneous admission of evidence violates due process only if it results in the denial of a fundamentally fair trial. Id. at 72. The Supreme Court has held "that the potential unreliability of a type of evidence does not alone render its introduction at the defendant's trial fundamentally unfair." Perry v. New Hampshire, 565 U.S. 228, 245 (2012). In Perry, the court went on to state that "[o]ur unwillingness to enlarge the domain of due process . . . rests, in large part, on our recognition that the jury, not the judge, traditionally determines the reliability of evidence." Id. Perry recognized some instances in which a petitioner's due process rights are implicated by evidentiary reliability, but only where law enforcement engaged in improper conduct during an identification. Id. at 241-242.

### C. The State Court's Ruling

The court of appeal rejected this claim:

> Citing United States v. Wade (1967) 388 U.S. 218, 237–238 [18 L.Ed.2d 1149, 1162–1164], Langarica claims his federal constitutional rights were violated by the trial court's failure to exclude any in-court identification as "impermissibly tainted" by circumstances of the preliminary hearing identification.[8] The

---

[8] Corral cites People v. Craig (1978) 86 Cal.App.3d 905, for the same proposition. In that case, the court held that a " 'single person showup' " was impermissibly suggestive if it was not

16

United States Supreme Court recently clarified the holding in Wade and other cases involving the suppression of identification evidence, saying its intent was to prevent unfair police practices, not to eliminate suggestive identifications. (Perry v. New Hampshire (2012) 565 U.S. \_\_\_, \_\_\_ [181 L.Ed.2d 694, 709–710] (Perry).) Screening for reliability before trial is required only when it is necessary "to deter police from rigging identification procedures." (Id. at p. \_\_\_ [181 L.Ed.2d. at p. 703].)

The Perry majority emphasized its recognition that "the jury, not the judge, traditionally determines the reliability of evidence" and numerous other safeguards of the adversary system protect against "dubious identification evidence." (Perry, supra, 565 U.S. at p. \_\_\_ [181 L.Ed.2d at pp. 710–712] [mentioning vigorous cross-examination, opening and closing arguments, jury instructions and protective rules of evidence, including the admissibility of expert testimony about the hazards of eyewitness identification].) The California Supreme Court acknowledged Perry's holding in stating that the "federal Constitution's due process clause is not implicated" when suggestive identification procedures are "not arranged by law enforcement officers." (People v. Thomas (2012) 54 Cal.4th 908, 931.)

In this case, by the time of the preliminary hearing, two accomplices already identified the defendants. The wife corroborated the identification by pointing to Corral in an unchallenged photo array procedure. The trial court allowed both defendants to wear civilian clothing and Corral to wear glasses; it allowed both to choose their seats in the courtroom and also to question the wife before any identification.

Even if the procedures had been unduly suggestive, they did not implicate due process because they were not arranged by law enforcement officers. (People v. Thomas, supra, 54 Cal.4th at p. 931.) Moreover, the California Supreme Court has "never extended the rules regarding extrajudicial identifications to subsequent identifications in court." (People v. Carpenter (1997) 15 Cal.4th 312, 368.)

The trial court did not err when it concluded that determining the reliability of the wife's testimony was within the province of the jury. The trial court was not required to weigh the evidence for reliability before trial, and it was not required to exclude it. Even when reliability is reviewed before trial, witness identification is inadmissible only when there is a " ' "very substantial likelihood of irreparable misidentification." ' " (People v. Arias (1996) 13 Cal.4th 92, 168, quoting Manson v. Brathwaite (1977) 432 U.S. 98, 116 [53 L.Ed.2d 140, 155] and Simmons v. United States (1968) 390 U.S. 377, 384 [19 L.Ed.2d 1247, 1253].) Defendants have not established a substantial probability that they were misidentified or a violation of due process.

---

justified by the circumstances of the case. (Id. at 914.) [footnote in original text]

Langarica, 2014 WL 4735000, at *4–5. Petitioner raised this claim in his petition for review that was summarily denied by the California Supreme Court. Lodged Docs. 6-7.

### D. Objective Unreasonableness Under § 2254(d)

The court of appeal's denial of this claim was reasonable. The Supreme Court has never "made a clear ruling that admission of irrelevant or prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009). "[O]nly if there are no permissible inferences the jury may draw from the evidence can its admission violate due process." Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991). Here, there were clearly permissible inferences which the jury could draw from the victim's identification of the petitioner. The jury was also, as noted in by the Supreme Court in Perry, the appropriate entity to weigh the reliability of the victim's identification. Finally, the relevant identification procedures in this case were not arranged by law enforcement and, accordingly, the exceptions identified in Perry do not apply. Based on the foregoing, the court finds that the state court's denial of this claim was not an unreasonable application of federal law within the meaning of AEDPA.

## CONCLUSION

IT IS HEREBY ORDERED that, pursuant to Federal Rule of Civil Procedure 25(d), the Clerk of Court shall substitute Scott Frauenheim, Warden of Pleasant Valley State Prison for the People of California as a respondent.

Additionally, for all the reasons explained above, the state courts' denial of petitioner's claims was not objectively unreasonable within the meaning of 28 U.S.C. § 2254(d). Accordingly, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections,

he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. See 28 U.S.C. § 2253(c)(2). Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 12, 2017

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE